## J. R. JOHNSON & CO., Inc., v. NOEL, Collector of Internal Revenue.

District Court, E. D. Virginia. July 31, 1926.

1. Internal revenue ⬤═7(17), 9(27)—Capital stock purchased by corporation held properly excluded from invested capital in determining income and excess profits taxes (Revenue Act 1917, 40 Stat. 300).

Capital stock, purchased by corporation and held as treasury stock, held properly excluded from invested capital, under Revenue Act 1917, 40 Stat. 300, in determining income and excess profits taxes.

2. Internal revenue ⬤═9(27)—Good will purchased with corporate shares may be included in invested capital at actual cash value, in amount not exceeding 20 per cent. of capital stock.

Where good will is purchased with shares of corporation, it may be included in invested capital for purpose of determining excess profits taxes at a value not to exceed its actual cash value at time of such purchase, and in an amount not to exceed 20 per cent. of the shares of capital stock outstanding.

3. Internal revenue ⬤═38(12)—Corporation, seeking allowance for good will as invested capital, has burden of proving corporation, issuing stock therefor, acquired assets of equal value.

Corporation, suing to recover excessive income and excess profits tax on theory that allowance should have been made in a certain amount for good will, has burden of proving that corporation issuing stock as consideration for good will hereby acquired assets of equal value, and evidence relative thereto must be clear.

4. Internal revenue ⬤═38(12)—Evidence held insufficient to establish that stock issued for good will actually received a quid pro quo as required.

In suit to recover excessive income and excess profits taxes, on theory that there should have been an allowance for good will purchased with shares of corporation, as invested capital, evidence held insufficient to establish that stock issued on account of good will actually received a quid pro quo as required by the Revenue Act, in addition to the transfer of assets on the books.

At Law. Suit by J. R. Johnson & Co., Inc., against J. C. Noel, Collector of Internal Revenue. Judgment for defendant.

Wellford & Taylor, of Richmond, Va., for plaintiff.

Paul W. Kear, U. S. Atty., of Norfolk, Va., for defendant.

GRONER, District Judge. This is a suit brought against the collector of internal rev-

enue to recover the sum of $8,644.35 paid by the plaintiff to the United States as income and excess profits taxes for the year 1917 and now claimed to have been excessive, erroneous, and illegal, and paid under duress. By written stipulation a jury was waived and all matters of law and fact submitted to the court.

The present plaintiff is the successor of a partnership formerly existing under the name of Johnson & Co.; the partners being John R. Johnson, of Connecticut, and George L. Street, of Richmond, in the proportion of two-thirds to one-third. Johnson died in 1908. His share of the business was inherited by his daughter, at whose insistence the business was, in 1909, incorporated under the name of J. R. Johnson & Co., Inc. For several years thereafter the business was conducted without profit, and in 1912 Mrs. Russell, Johnson's daughter, who owned 2,114 shares of the total issue of 3,000 shares, entered into a contract with the company for the sale of her entire stockholding interest in the company for the sum of $67,000. The effect of this agreement was to leave the entire remaining outstanding stock of the company in the hands of Street, who, of course, was thereby enabled to do with the company as he pleased; and, notwithstanding the fact that the purchase price of the Russell stock was paid out of funds belonging to the company, he caused 45 shares of the stock so acquired to be transferred to his son, George L. Street, Jr., 5 shares to be transferred in the names of some of his employees, and the remaining 2,064 shares to be transferred into his own name, and in January, 1914, he surrendered 1,500 shares of the stock to the company and the last named shares became thereafter treasury stock.

The question whether Street had purchased the stock and borrowed the money from the company, or whether the company had purchased the stock and owned it, became an issue in ascertaining the taxes due by the company in 1917, because, in the event the stock was purchased by Street, admittedly he owed the company the purchase price thereof. A witness named Newell, examined by the plaintiff, testified that, with the exception of $15,000, which last-named amount was furnished by Mrs. Street, the entire purchase price was taken out of the company's bank account. The books of the company show the transaction as above indicated from the time of the consummation of the purchase of the stock until 1918, and in that year, after the government examiner had gone over the books, they were changed by the book-keeper, by setting up a charge against Mr. Street, Sr., of $67,000, covering the purchase price of the stock, and a credit of $15,000 (being the money furnished by Mrs. Street), or, in other words, an account receivable against George L. Street of $52,000, and it is this item which the company seeks in this suit to have allowed as invested capital.

[1] Upon consideration of all these facts, the conclusion I have reached is, first, that the offer of Mrs. Russell, with reference to the sale of 2,114 shares of the capital stock of the company owned by her in 1912, was to sell the stock to the company, that is to say, J. R. Johnson & Co., Inc., and not to Mr. Street; second, that the action of the stockholders of the company at a special meeting held on March 20, 1912, was to carry this agreement into effect; third, that this action was ratified by the directors on March 20, 1912; and, fourth, that as a result of the contract so entered into between Mrs. Russell and the company the latter became the owner of 2,114 shares of its own capital stock, and this, as treasury stock, was properly excluded from "invested capital," under the Revenue Act of 1917 (40 Stat. 300).

The remaining item in dispute is the claim on behalf of the company of a "good will" account of $25,000. This item was rejected by the examiner, who was sustained by the Treasury Department. In order to understand the claim in this respect, it is necessary to go back to the organization of the corporation in 1909. During the period of the partnership no "good will" account had been set up on the books, but when the corporation was formed a good will account was set up in the value of $25,000, and was shown as part of the consideration for the stock issue of 3,000 shares.

[2-4] Under the provisions of the Revenue Act of 1917 (section 207 [Comp. St. § 6336⅜h]) good will might be included as invested capital, if the corporation had made bona fide payment therefor specifically as such in cash, in tangible property, or in shares of its stock. The question, therefore, is whether or not the $25,000 now claimed as good will in 1917, and for which it is claimed $25,000 in stock was issued, represented actual cash value of assets acquired with stock issued prior to March 3, 1917. There is, of course, no way now of ascertaining the real value of the assets acquired from the partnership by the corporation in 1909, except as they appear on the company's books. If the good will is purchased with shares of a corporation, it may be included in invested

capital at a value not to exceed its actual cash value at the time of such purchase and in an amount not exceeding 20 per cent. of the total shares of the capital stock outstanding. There appears in evidence a balance sheet of the partnership as of the close of business at the end of 1908 and just preceding the incorporation. This balance sheet shows net assets amounting to approximately $260,000. The balance sheet of the corporation as of the time it commenced business, covering the same items included in the partnership account of a few days previous, shows net assets of approximately $300,000, against which was issued $300,000 of stock, and included in which was $25,000 for good will.

If the transfer of the assets from the old company to the new represented an actual sale of the property, it might be very readily argued that the $300,000 of stock issued by the new company represented, as to $25,000 thereof, the purchase price of the good will; but there was no such change of ownership as ordinarily accompanies a sale and transfer of property. It was merely the incorporation of an existing business, by the transfer of the assets from the partnership to the corporation, the incorporators and stockholders being identically the same persons as the partners, and the segregation of assets by item and the set-up on the books of the $25,000 good will account was nothing more than a bookkeeping arrangement for the convenience of the parties. It does not prove what is required by the statute to be proven, namely, that there was thereby acquired assets of that value, and the oral evidence taken here does not supply this omission.

The burden of proof in this respect is on the plaintiff, and I take it that, in order to have the benefit of the allowance of an item such as good will as a part of its invested capital, the evidence must be clear. If the evidence in this case disclosed—as it does not—that the new company, plaintiff here, purchased from the old partnership tangible assets in the value of $260,000 for $300,000 of its capital stock, it might very readily claim that $25,000 of the stock represented a payment on account of good will; but, in addition to the fact that the transaction, so far as the transfer of assets was concerned, was one merely of bookkeeping, there is nothing, except the mere fact that the item of $25,000 was set up against good will, to show how much stock was issued on account of it, or whether the stock so issued against it really and actually received a quid pro quo as required by the Revenue Act.

It is true one of the witnesses testified that the assets, at the time of the transfer from the partnership to the corporation, were underestimated, rather than overestimated; but this testimony is too indefinite upon which to predicate a decision as to their real value. Certainly three years later they appear to have been worth very much less than $260,000, because otherwise the control of the business, together with approximately 70 per cent. of the stock, would not have been sold for $65,000. It was stated in the course of the trial that the Commissioner, under the subsequent Revenue Law, had allowed the item of good will. Whether this was due to a change in the law, or a change in the entire internal structure of the company, I am not advised; but on the record now before me I am impelled to conclude that there is not sufficient evidence showing a compliance with the terms of the statute under which this good will item may be considered as invested capital.

In these circumstances, the Commissioner was correct in rejecting it as a part of the invested capital, and therefore the claim for rebate on its account must be, and is, rejected, from all of which it follows that there should be judgment for the defendant, which will be entered accordingly. The plaintiff will be considered as having moved for a new trial, which motion the court overrules, and allows an exception, and also allows 60 days within which to prepare bills of exception, etc.